UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT JAMES SPEARS,

                Petitioner,

vs.                           Case No. 2:06-cv-213-FtM-29SPC

JAMES McDONOUGH,

                Respondent.
_____

**OPINION AND ORDER**

**I. Status**

Petitioner, Robert James Spears, (hereinafter "Petitioner" or
"Spears"), initiated this action by filing a *pro se* Petition for
Writ of Habeas Corpus (Doc. #1, "Petition") pursuant to 28 U.S.C.
§ 2254 on April 26, 2006.[1] Petitioner submitted an Appendix in
support of his Petition (Doc. #3, Appendix). Petitioner challenges
his state court judgment of conviction for first degree burglary
(count one) and robbery possessing firearm (count two), entered in
the Twentieth Judicial Circuit Court, Lee County, Florida (case
number 02-0057CFB) for which he was sentenced to two concurrent 25

---

[1]The Petition (Doc. #1) was docketed and filed in this Court
on this date. The Court generally applies the "mailbox rule" and
deems the Petition "filed on the date it was delivered to prison
authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523
F.3d 1291, 1294 n.4 (11th Cir. 2008). Here the Petition does not
indicate on what date the Petitioner signed or delivered to
Petition to prison officials.

year sentences.   Petition at 1.[2]   The Petition identifies the

following nine grounds for relief:

1.  Whether the trial court abused its discretion in admitting into evidence items found at the crime scene that were not connected to the crime;

2.  Whether Petitioner was denied effective assistance of trial counsel when counsel failed to object to the in-court identification of Petitioner;

3.  Whether Petitioner was denied effective assistance of trial counsel when counsel failed to impeach identification witness Robert McConnon;

4.  Whether Petitioner was denied effective assistance of trial counsel when counsel failed to move to suppress the show-up identification by victim Robert McConnon;

5.  Whether Petitioner was denied effective assistance of trial counsel when counsel failed to adequately investigate and prepare for trial;

6.  Whether Petitioner was denied effective assistance of trial counsel when counsel failed to object to the prosecutor's "bolstering" statements during closing argument;

7.  Whether Petitioner was denied effective assistance of trial counsel when counsel failed to object to the prosecutor shifting the burden of proof in closing;

8.  Whether Petitioner was denied effective assistance of trial counsel due to counsel's cumulative errors;

9.  Whether the trial court erred when instructing the jury.

---

[2]Petitioner was also convicted of resisting or obstructing an officer without violence (count three) but was sentenced to time served on this count.  Petitioner does not identify this conviction in his Petition.

See generally Petition.  On May 12, 2006, Petitioner submitted a Supplement to his Petition (Doc. #7, "Supp.") and a Supplement to his Appendix (Doc. #8, "Supp. App.").  Petitioner identifies the following additional ground for relief in his Supplement:

> 10.  Whether the prosecutor knowingly used false testimony at trial.

Supp. at 2.

Respondent filed a Return to Order to Show Cause on July 12, 2006 addressing the first nine grounds raised in the Petition (Doc. #13, Response).  Respondent also submitted exhibits in paper format in support of his contentions (Exhibits 1-19).  See Master Index to Appendix (Doc. #15).[3]  Petitioner, after filing an initial Traverse to Respondent's Response (Doc. #16, "Reply"), submitted various supplements and appendices to his reply.  See Docs. #19, #20, #22, #23, #24, and #26).  The Court ordered Petitioner to file a single free-standing supplement to his Reply.  See December 11, 2006 Order (Doc. #25).  On July 20, 2007, Petitioner filed a Supplement to his Reply (Doc. #31, "Supp. Reply").

Upon review of the Response, the Court directed Respondent to file a response to Petitioner's Supplement to Petition (Doc. #32).  On September 4, 2009, Respondent filed a Motion to Dismiss; Respondent's Supplemental Response to Petitioner's Ground Ten (Doc.

---

[3]The Court will hereinafter refer to the exhibits that are referenced in and submitted in support of the Response as "Exh."

#34, "Supp. Response").[4]  On September 14, 2009, Petitioner filed a Traverse to Respondent's Supplemental Response in connection with Petitioner's ground ten of the Supplement (Doc. #37, "Traverse"). This case is ripe for review.

## II. Procedural History

On August 27, 2002, the State Attorney for the Twentieth Judicial Circuit in Lee County filed a second amended information in case number 02-0057CFB charging Spears as follows: (count I) first degree burglary in violation of section 810.02, Florida Statutes; (count II) robbery-possessing firearm in violation of section 812.13, Florida Statutes; and, (count III) resisting or obstructing an officer without violence in violation of section 843.02, Florida Statutes.  Exh. 1.  At the conclusion of Spears'

---

[4]Respondent seeks dismissal of the Attorney General as the named respondent and substitution of the Secretary of the Florida Department of Corrections in his stead.  Supp. Resp. at 1-3.  Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts (hereinafter the "Rules") provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent."  The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 124 S. Ct. 2711, 2717 (2004).  This is "'the person with the ability to produce the prisoner's body before the habeas court.'"  Id.  When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 2718 (citations to other authorities omitted).  In Florida, that person is Walter A. McNeil, the current Secretary of the Florida Department of Corrections.  Thus, the Court will dismiss the Florida Attorney General and substitute Walter McNeil as a proper respondent.

December 3, 2002 trial, the jury found Spears guilty as charged in count I, of burglary while armed or with an assault or battery; and, count II, of robbery with a firearm. Ex. 3. In both counts I and II, Spears was convicted as a principal but not actually possessing a firearm. Id. Spears was also found guilty of count III, resisting an officer without violence. Id. On January 31, 2003, Spears was sentenced as a habitual felony offender to 25 years imprisonment concurrent for counts I and II, and time served on count III. Ex. 4.

Petitioner directly appealed his conviction and sentence raising two claims of error:

1.  Whether the trial court erred in denying Spears' motion for judgment of acquittal?

2.  Whether the trial court erred by admitting into evidence items found at the crime scene that were not connected to the crime?

Ex. 5. The State filed an Answer Brief. Exh. #6. On May 28, 2005, the State appellate court *per curiam* affirmed Spears' conviction and sentence, without a written opinion. Spears v. State, 875 So. 2d 620 (Fla. 2d DCA 2004); Exh. #7.

On August 6, 2004, Spears filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 alleging trial counsel was ineffective for: 1) failing to adequately impeach identification witness McConnon; 2) failing to object to in-court identification; 3) failing to move to suppress show-up identification; 4) failing to investigate and prepare for trial; 5)

failing to object to the prosecutor's "bolstering" statements in closing; 6) failing to object to the prosecutor shifting the burden of proof in closing; and, 7) the cumulative errors identified above. Exh. #9 (hereinafter "Rule 3.850 motion"). The State filed its response to the Rule 3.850 motion, and Spears filed a reply. Exhs. ##10-11. On August 31, 2005, the post conviction trial court summarily denied the Rule 3.850 motion without an evidentiary hearing. Exh. #12. Spears appealed the post conviction trial court's summary denial, and submitted various briefs and amendments thereto in support. Exhs. ##13-15. On March 22, 2006, the State appellate court *per curiam* affirmed the post-conviction court's summary denial of the Rule 3.850 motion. <u>Spears v. State</u>, 926 So. 2d 1285 (Fla. 2d DCA 2006); Exh. #18. Mandate issued on April 26, 2006. Exh. #19.

While his appeal of the summary denial of his Rule 3.850 motion was pending, Spears filed a *pro se* State petition for writ of habeas corpus. Exh. #16. Therein, he claimed that fundamental error in jury instructions required a new trial. <u>Id.</u> On March 6, 2006, the State appellate court denied Spear's *pro se* State petition for writ of habeas corpus. Exh. #17.

### III.  Applicable § 2254 Law

_____Spears filed his timely[5] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action.  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n. 9 (11th Cir. 2007).  Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)."  Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002). Prior to the Court reviewing a claim on the merits, certain aspects of the AEDPA, are relevant to this matter.

### A.  Federal Question

A federal court may only entertain an application for a writ of habeas corpus from a state prisoner who claims his custody

---

[5]The AEDPA imposes a one-year statute of limitations on § 2254 actions.  28 U.S.C. § 2244(d).  Respondent acknowledges that "less than the one year time bar" elapsed between the date Petitioner's conviction became final and the filing of the instant Petition. Response at 9.  The Court agrees the Petition is timely.

violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Violations of a state rule of procedure, or of state law itself, is not itself a violation of the federal constitution. Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1982); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989). "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." Herring v. Sec'y. Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotations and citations omitted). Although the determination of whether a constitutional decision of the Supreme Court is a matter of federal law, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." Danforth v. Minnesota, 128 S. Ct. 1029, 1048 (2008).

**B. Exhaustion**

For a ground asserted by a petitioner to warrant review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues. 28 U.S.C. 2254(b)(1)(A). This imposes a "total exhaustion" requirement in which all the federal issues must have

first been presented to the state courts.  <u>Rhines v. Weber</u>, 544
U.S. 269, 274 (2005).  "In other words, the state prisoner must
give the state courts an opportunity to act on his claims before he
presents those claims to a federal court in a habeas petition."
<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).  <u>See also</u>
<u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state
prisoner seeking federal habeas relief cannot raise a federal
constitutional claim in federal court unless he first properly
raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250
F.3d 1308, 1313 (11th Cir. 2001)); <u>Duncan v. Henry</u>, 513 U.S. 364,
365 (1995)("exhaustion of state remedies requires that petitioners
'fairly present federal claims to the state courts in order to give
the State the opportunity to pass upon and correct alleged
violations of its prisoners' federal rights'").

A petitioner must present the <u>same</u> claim to the state court
that he now requests the federal court to consider.  <u>McNair v.</u>
<u>Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted);
<u>Kelly v. Sec'y for the Dep't of Corr.</u>, 377 F. 3d 1317, 1343-44
(11th Cir. 2004).  Thus, the exhaustion requirement is not
satisfied if the claims raised before the state court were not
raised in terms of federal law.  <u>Gray v. Netherland</u>, 518 U.S. 152,
162-63 (1996); <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337, 1342
(11th Cir. 2007).

If a petitioner fails to exhaust a claim, the court may
dismiss the petition without prejudice to permit exhaustion, if

appropriate. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citations omitted).

### C. Procedural Default

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." <u>Henderson</u>, 353 F.3d at 891 (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)). A procedural default may also result from non-compliance with state procedural requirements. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). When a state court correctly applies a procedural default principle of state law, federal courts must abide by the state court decision, <u>Harmon v. Barton</u>, 894 F.2d 1268, 1270 (11th Cir. 1990), but only if the state procedural rule is regularly followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). . . .

<u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), <u>cert.</u> <u>denied</u>, 127 S. Ct. 1823 (2007); <u>see</u> <u>also</u> <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may not review a claim that a petitioner procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief), <u>cert. denied</u>, 526 U.S. 1047 (1999). This is true where the appellate court silently affirms the lower court procedural bar since federal courts should not presume an appellate state court would ignore its own procedural rules in summarily denying applications for post-conviction relief. <u>Tower v.</u> <u>Phillips</u>, 7 F.3d 206, 211 (11th Cir. 1993).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006); <u>Mize</u>, 532 F.3d at 1190. "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." <u>Henderson v.</u> <u>Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003) (quoting <u>Wright v.</u> <u>Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999)). Constitutionally ineffective assistance of counsel can constitute cause if that

claim is not itself procedurally defaulted. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000). To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." <u>Henderson</u>, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. <u>House</u>, 547 U.S. at 536; <u>Edwards</u>, 529 U.S. at 451; <u>Henderson</u>, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." <u>Henderson</u>, 353 F.3d at 892. <u>See also</u> <u>House</u>, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

### D. Deference to State Court Decision

A federal court must afford a high level of deference to the state court's decision. <u>See, e.g.</u>, <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141
(2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state
court's summary rejection of a claim, even without explanation,
qualifies as an adjudication on the merits which warrants
deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of
Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples
v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied,
545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing
legal principles, rather than the *dicta*, set forth in the decisions
of the United States Supreme Court at the time the state court
issues its decision. Carey v. Musladin, 549 U.S. 70, 74
(2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In
cases where nothing in the Supreme Court's jurisprudence addresses
the issue on point or the precedent is ambiguous and gives no clear
answer to the question, it cannot be said that the state court's
conclusion is contrary to, or constitutes an unreasonable
application of, "clearly established Federal law." Wright v. Van
Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S.
12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme
Court's clearly established precedents within the meaning of §
2254(d)(1) only if: (1) the state court applies a rule that
contradicts the governing law as set forth in Supreme Court cases,
or (2) the state court confronts a set of facts that is "materially
indistinguishable" from those in a decision of the Supreme Court
and yet arrives at a different result. <u>Brown</u>, 544 U.S. at 141;
<u>Mitchell</u>, 540 U.S. at 15-16. Further, it is not mandatory for a
state court decision to cite, or even to be aware of, the relevant
Supreme Court precedents, "so long as neither the reasoning nor the
result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8
(2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application"
of the Supreme Court's precedents if the state court correctly
identifies the governing legal principle but applies it to the
facts of the petitioner's case in an objectively unreasonable
manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526,
531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if
the state court either unreasonably extends a legal principle from
[Supreme Court] precedent to a new context where it should not
apply or unreasonably refuses to extend that principle to a new
context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting
<u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application"
inquiry "requires the state court decision to be more than
incorrect or erroneous"; it must be "objectively unreasonable."

-14-

<u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review <i>de novo</i>; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1046 (2001) (citation omitted).

**E.    Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. <u>Newland</u>, 527 F.3d at 1184. In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688. Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u> <u>sub</u> <u>nom.</u> <u>Jones v. Allen</u>, 127 S. Ct. 619 (2006). A court must "judge the

-16-

reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

## IV. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record, including the three volume trial transcript, and concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the

pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 550 U.S. at 474; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

**<u>Ground One</u>: Trial Court Error**

In his first ground for relief, Petitioner argues that the trial court abused its discretion in admitting into evidence items found at the crime scene that were not connected to the crime. Petition at 7. Petitioner identifies the following items as improperly admitted into evidence over objection by defense counsel: size XL dark-blue sweatshirt (exhibit #33), size XL black Starter sweat pants (exhibit #34), seven live .45 caliber rounds and two live 9mm rounds and one live unknown caliber round found on the night stand (exhibit #36), one live 12 gauge Remington shotgun shell (exhibit #37), two gloves (exhibit #38), pair of gloves (exhibit #39), brown pair of gloves (exhibit #40), and size XXL grey sweatshirt with hood (exhibit #41). Petition at 7. Petitioner argues that, although these items were seized at the victim's house, none of the items were identified as belonging to Petitioner, or even identified as being connected to the crime. <u>Id.</u> Petitioner raised this issue on direct appeal. <u>See</u> <u>generally</u> Exh. 5 at 32-33.

Respondent concedes that Petitioner exhausted his first ground for relief, but contends that the claim "is not cognizable in a federal habeas action." Response at 12. Respondent, citing to

<u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991), argues that issues concerning the admissibility of evidence are questions of state law. <u>Id.</u>

The Court agrees. First, it is clear that, although Petitioner raised this issue on direct appeal, he raised this issue in terms of State law grounds only. In particular, Petitioner cited to only State law cases and argued that the evidence admitted was "irrelevant." Exh. 4 at 32. On direct appeal, Petitioner pointed out that trial counsel objected to these pieces of evidence "on relevance and no foundation." <u>Id.</u> Petitioner did not claim that the evidentiary rulings unduly prejudiced him, or otherwise denied him a fair trial.[6] Consequently, as exhausted, this ground challenges specific evidentiary rulings made by the trial court on State evidentiary and common law grounds. As such, this ground is not subject to review because this Court may not inquire into the validity of the trial court's application of its own evidentiary rules, <u>i.e.</u> issues of state law. <u>Carrizales v. Wainwright</u>, 699 F.2d at 1055; <u>Cabberiza v. Moore</u>, 217 F.3d 1329 at 1333. <u>See also</u> <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988).

---

[6]A federal court's inquiry of evidentiary rulings is limited to determining whether the alleged evidentiary errors "so infused the trial with unfairness as to deny due process of law." <u>Felkner v. Turpin</u>, 83 F.3d 1301-1311-12(11th Cir. 1996). Here, Petitioner does not advance a due process claim. Further, the Court independently does not find that the admission of these items of evidence rose to a level that denied Petitioner a fundamentally fair trial. <u>Hall v. Wainwright</u>, 722 F. 2d 766, 770 (11th Cir. 1984).

Consequently, the Court will dismiss ground one as not proper for habeas review.

**Grounds 2-8: Ineffective Assistance of Counsel**

Respondent acknowledges, and the Court agrees, that Petitioner exhausted each of his six grounds of ineffective assistance of trial counsel raised in the instant Petition by raising these issues in his Rule 3.850 motion and the appeal of the denial thereon. Response at 9-10. The post-conviction court, in summarily denying Petitioner's Rule 3.850 motion, "approves and adopts the State's Response" finding that "portions of the transcript [ ] clearly refute the [Petitioner's] claims." Exh. 12 at 1, ¶3.

In its response to the Rule 3.850 Motion, the State identified Strickland as the controlling law governing claims that counsel was ineffective. Exh. 10 at 2. Thus, the record reflects that the state courts applied the clearly determined federal law as determined by the Supreme Court of the United States. Therefore, the proper standard for ineffective assistance of counsel was applied by the state court.

Further, the post-conviction court also determined that no evidentiary hearing was necessary because the record conclusively refuted Petitioner's claims. This finding is consistent with federal law, which also holds an evidentiary hearing is unnecessary if the record refutes a petitioner's claims. Schriro v. Landrigan, 550 U.S. at 474 ("It follows that if the record refutes the

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

Thus, the Court must determine whether the state court unreasonably applied the <u>Strickland</u> standard to the facts of Petitioner's case. In other words, Petitioner must demonstrate that the state court's decision was "objectively unreasonable" not just incorrect or erroneous. <u>Williams v. Taylor</u>, 529 U.S. at 413. Consequently the Court will review the facts as to each of the six grounds alleging ineffective assistance of trial counsel.

### A. Grounds Two and Three

Petitioner's claims of ineffectiveness of trial counsel raised in grounds two and three are related. In his second ground for relief, Petitioner claims that counsel was ineffective for failing to object to Robert McConnon's in-court identification of Petitioner. Petition at 11. In support, Petitioner contends that he was "never identify [sic] during arrest that night during the initial arrest of the show-up one man line up . . . by face or cloth[e]s or scar or eyes period." <u>Id.</u> Petitioner raised this ground as his second claim in his Rule 3.850 motion. Exh. 9 at 25.

In his third ground for relief, Petitioner claims that counsel was ineffective for failing to impeach the in-court identification by Robert McConnon, due to McConnon's prior inconsistent statements. Petition at 13. In support of this ground, Petitioner states that "supporting facts show from police report, depo[sition]

and trial" that McConnon gave "inconsistent statements" concerning Petitioner's identification. Id. Thus, counsel was ineffective due to his failure to "impeach" McConnon due to these inconsistent statements. Id. Petitioner raised this ground as his first claim for relief in his Rule 3.850 motion. Exh. #9 at 11.

The State, provided the following in response to these two grounds:[7]

> McConnon told police that he did not get a very good look at the masked perpetrators before they ordered him to the floor and put a towel or blanket over his head. In deposition, McConnon described the un-masked men he saw in police show-ups as matching the general description of the robbers: dark clothing, black or real dark Puerto Ricans, big, hefty guys over 200-250 pounds. During the trial of codefendant Aaron Spears, McConnon described the perpetrators as black or Hispanic, and said he was able to identify them in show-up only by physical characteristics, rather than by their faces.

Id. The State then referred the post-conviction court to the attached trial testimony of Robert McConnon. Id. See Exh. 2, Vol. I at 172-216. Therein, the State pointed out that consistent with his pretrial testimony, McConnon at trial said "he probably could not identify the robbers, but when asked to look around the courtroom, indicated that he believed Defendant was one of them, based on general physical characteristics." Id. (citing to Vol I at 184-185). The State pointed out that defense counsel

---

[7]The State incorporates its response to Petitioner's claim that counsel was ineffective in failing to impeach McConnon in its response to Petitioner's claim that counsel was ineffective for failing to object to the in-court identification of Petitioner by McConnon. See Exh. 10 at 3.

cross-examined and re-cross examined Mr. McConnon on the identification issue. Id. (citing to Vol. I at 188-214 and 216, respectively).

The State further noted that other witnesses presented evidence concerning Petitioner's identification, and summarized their testimony for the post-conviction court as follows:

Felix Guzman Aguilero said as many as four masked men with guns came into his home, told him to "drop," and covered him with something. Although he could not identify the men, he was "pretty sure" they were still in the house when police arrived. See "Excerpt of Proceedings" Volume I of III, pages 81-116 (filed separately).

Debra Tippins saw two men in masks and dark clothing walking next to her neighbor's house. One had a gun. Police arrived while she was still on the phone to 911. They surrounded the house and ordered everyone out through the front door. Three men came out low to the ground, then jumped up and started running. See "Excerpt of Proceedings" Volume I of III, pages 118-142 (filed separately).

Deputy Doug Vollmer arrived within minutes of dispatch and observed people pacing back and forth inside the house. Other deputies arrived and took up positions around the house. Three men attempted to flee the scene. All three, including Defendant, were apprehended. See "Excerpt of Proceedings" Volume II of III, pages 222-244 (filed separately).

Sergeant James Brown responded to a robbery in progress on Buena Vista. He recognized the Spears brothers doing a "low crawl" out of the house, and take off running in different directions. Brown grabbed Aaron Spears, and made an in-court identification of Defendant as "Robert Spears." See "Excerpt of Proceedings" Volume II of III, pages 270-283 (filed separately).

Corporal Pete Hedrick recognized the Spears brothers exiting the Buena Vista house and identified Defendant in court. He chased Defendant, tracked him with a K-9 dog, and caught him hiding in a covered Jacuzzi on a

screened-in porch. See "Excerpt of Proceedings" Volume II of III, pages 284-303 (filed separately).

Corporal Arthur Eggeling responded and recognized Robert Spears, Aaron Spears, and Bernard Leonard as they exited the house. Defendant was uncooperative and fled. See "Excerpt of Proceedings" Volume II of III, pages 306-322 (filed separately).

Defendant's statement to Corporal Matthew was published to the jury. See "Excerpt of Proceedings" Volume III of III, pages 418-448 (filed separately).

Defendant's trial testimony, attached to and made part of this response, appears on pages 472-502 of "Excerpt of Proceedings" Volume III of III. Defendant admitted that he had three prior felony convictions, a 15-year addiction to heroin, and dealt drugs to support his habit, buy clothes, and supplement his income (pages 472, 473). He knew victim "Guzman" [Felix Guzman Aguilero] who bought drugs from Defendant and repaired his car (page 473), but did not know victim McConnon (page 474). He admitted going to the house on Buena Vista the night of the robbery, as well as many times before to obtain drugs from his supplier, "Carlos" (477). Defendant said that, while he was at the house to pick up drugs from his supplier, his codefendant brother, Aaron Spears, arrived unexpectedly wearing a mask (page 482). Codefendant Leonard came in from the back (page 483). The victims and police thought Defendant was there to commit robbery with them.

In Brown v. State, 846 So. 2d 1114 (Fla. 2002), the Supreme Court of Florida considered a claim of ineffective assistance of counsel based on insufficient impeachment, holding:

> "The Standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Cherry v. State, 659 So. 2d 1069. 1073 (Fla. 1995).

The State submits that Defendant has failed to meet the Strickland standard.

Exh. 10 at 2-3.

A review of the referenced testimony reveals that defense counsel attempted to impeach Mr. McConnon concerning the identification of the assailants during cross-examination, and recross-examination. <u>See</u> <u>generally</u> Exh. 2, Vol. I at 188-214, 215-217. Nonetheless, Mr. McConnon's trial testimony was consistent with his deposition testimony and his statement made to police that he did not get a look at the faces of the assailants, but could only give the "general characteristics" of the assailants as black and "over 200 pounds." <u>Id.</u> at 209-213. Further, McConnon admitted that he focused on the assailants' "pistols" and "wasn't necessarily looking at whether they had a scar on their nose or whatever." <u>Id.</u> at 210. When identifying the Petitioner in the courtroom, McConnon stated that "he has the general characteristics of the people that I saw." <u>Id.</u> at 213.

Consequently, the Court finds that the state court's decision on these two grounds was neither contrary to, nor an unreasonable application of, the clearly established federal law or an unreasonable determination of the facts. Thus, the Court will deny grounds two and three of the Petition as without merit.

### B. Ground Four

In his fourth ground for relief, Petitioner faults counsel for failing to suppress the show-up identification of Petitioner. Petition at 14. In support, Petitioner states that a "show-up identification is more inherently suggestive." <u>Id.</u> at 15. Petitioner raised this same ground as his third claim in his Rule

3.850 motion. Exh. 9 at 28. In his Rule 3.850 motion, Petitioner asserts that counsel should have moved to suppress McConnon's identification of Petitioner after Petitioner was apprehended by police and returned to the scene. Petitioner claims that because McConnon admitted that he did not see any of the assailants' faces, McConnon's identification of the three assailants at the scene was unreliable. Id.

The State responded to this ground for relief as follows:

In deposition, McConnon described the unmasked men he saw in police show-ups as matching the general description of the robbers-dark clothing, black or real dark Puerto Ricans, big, heavy guys over 200-250 pounds. The record demonstrated that there was nothing suggestive about the show-up, if McConnon's remarks can be considered identification. See Paragraph I, *supra*. Counsel cannot be deemed ineffective for failing to prevail on a meritless issue. Teffeteller v. Dugger, 734 So. 2d 1009 (Fla. 1999).

Exh. 10 at 3-4.

An eyewitness identification may constitute a due process violation if the identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds by Griffin v. Kentucky, 479 U.S. 314 (1987); see also Manson v. Brathwaite, 432 U.S. 98, 104 (1977); Neil v. Biggers, 409 U.S. 188, 196 (1972). The fact that the identification procedure used was suggestive, alone, does not violate due process. See Biggers at 198-99. Rather, the "central question" is "whether under the 'totality of the circumstances' the identification was

reliable even though the confrontation procedure was suggestive."
Id. at 199. The Supreme Court has identified several factors to
consider in evaluating "the likelihood of misidentification,"
including: (1) the opportunity of the witness to view the criminal
at the time of the crime; (2) the witness's degree of attention;
(3) the accuracy of the witness's prior description of the
criminal; (4) the level of certainty demonstrated by the witness at
the confrontation; and (5) the length of time between the crime and
the confrontation. Id. at 199-200.

The record reveals that Petitioner was seen fleeing the scene
and was located shortly thereafter by a K-9 dog immersed in a hot
tub under the hot tun cover. After being apprehended, Petitioner
was brought back to the scene and was placed in front of the police
vehicle's headlights for identification by McConnon, who identified
Petitioner and the two other suspects as looking like the guys who
did the robbery. Exh. 2, Vol II at 386. McConnon identified
Petitioner by his general physical characteristics, black, big guy
weighing over 200 pounds, and the type of clothing he was wearing.
Id. at Vol. I at 184-186, Vol. II at 210, 213, 386.

Assuming that McConnon's identification at the scene can be
construed as a "show-up identification," Petitioner has not
established that the identification was suggestive. Thus, counsel
cannot be deemed ineffective for failing to raise a meritless
objection. Nor has Petitioner demonstrated that no reasonable

lawyer would have acted as his trial attorney did in not seeking to suppress the alleged "show-up identification" by McConnon.

Further, it is clear from the record that the jury was made aware that McConnon was not able to identify Petitioner's face and was able only to describe Petitioner's general physical characteristics to police. Under Supreme Court precedent, the fact that these points were brought out during trial can reduce the danger that a petitioner's conviction was based on a misidentification. See Simmons v. United States, 390 U.S. 377, 384 (1968) ("The danger that use of the [pretrial identification] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."). Thus, the Court finds that the state court's decision on this ground was neither contrary to, nor an unreasonable application of, the clearly established federal law or an unreasonable determination of the facts, and will deny ground four of the Petition as without merit.

### C. Ground Five

In his fifth ground for relief, Petitioner claims that trial counsel failed to adequately investigate facts concerning identification witness [McConnon], the offense in question, and prepare for trial. Petition at 16. Petitioner raised this ground, as claim four, in his Rule 3.850 motion. Exh. 9 at 31. There Petitioner argued that his intended defense was to establish that

"he was at the residence to purchase heroin and that the robbery was committed by unknown persons who exited the residence before or during the arrival of the various sheriff's units." Id. at 31-32. Petitioner contends that had counsel reviewed McConnon's deposition testimony and McConnon's statement he made to police, he could have effectively cross-examined McConnon to elicit allegedly favorable testimony from him that support's Petitioner's defense theory. Id. at 36. In particular, Petitioner points to McConnon's statements to the police that he believed the intruders had exited the rear of the house, and that the intruders spoke Spanish, which neither he, nor his brother or Leonard, the third defendant speak. Id. at 37. Additionally, Petitioner complains about "an overall lack of preparedness" by defense counsel. Id. at 37-40. Petitioner claims that defense counsel did not depose, or appear at McConnon's deposition in his brother, Aaron's case, and was "grossly ineffective" for relying upon the deposition taken by his co-defendants' counsel, because their "positions were potentially adverse" to his. Id. at 38. Finally, Petitioner complained that counsel only met with him three times before trial and spent less than an hour with him preparing for trial. Id. at 38-40.

The State responded to this claim as follows:

Defendant claims counsel was ineffective for failure to adequately investigate and prepare to present Defendant's defense that he was at the residence to buy drugs, not to rob it. Defendant repeats the claim that counsel was unprepared for cross-examination of Robert McConnon. This claim is addressed in Paragraph I, supra. Defendant also complains counsel spent inadequate time discussing

-29-

trial preparation with him.  The Supreme Court of Florida
observed in <u>Hall v. State</u>, 420 So. 2d 872 (Fla. 1982):
"In the legal profession, as in many other facets of
life, it is not the amount of time that one spends on
something that counts, but, rather, the quality of what
one accomplishes with the time available."  Lack of
consultation between an attorney and his client does not
constitute *per se* ineffective assistance of counsel.
Defendant must demonstrate how he was prejudiced by the
lack of consultation.  <u>Jackson v. State</u>, 801 So. 2d 1024
(5lh DCA 2001). The State submits that Defendant has
failed to demonstrate prejudice and, as such, this claim
is insufficiently pled.

Exh. #10 at 4.

The Court finds Petitioner's claims concerning counsel's
alleged failure to prepare in connection with his investigation of
McConnon's prior deposition testimony and his readiness concerning
the cross-examination of McConnon is refuted by the record.  A
review of the trial transcript reveals that counsel rigorously
cross-examined McConnon.  Counsel can not impeach a witness where
their testimony is not inconsistent.  Here, based upon a review of
McConnon's testimony and contrary to Petitioner's interpretation,
McConnon's trial testimony was not inconsistent with his deposition
testimony or the statements he made to the police.  Further, the
transcript reveals that counsel did question McConnon in detail
about the layout of the house, in order to argue to the jury that
Defendant was in the house at the time of the robbery, consistent
with Defendant's chosen trial strategy.  Counsel also cross-
examined McConnon regarding his previous statement to the police
that the assailants were speaking Spanish.  <u>See</u> Exh. 2, Vol. II at
216.

Finally, Petitioner broadly and in conclusory terms complains about counsel's "overall lack of preparedness." Such a vague contention lacks the specificity necessary to demonstrate a claim under <u>Strickland</u>. Similarly, Petitioner's complaint that counsel spent inadequate time with him does not *ipso facto* render counsel ineffective. There is "no magic number" of hours that a defense counsel must spend with a client. Petitioner does not identify how spending more time with counsel would have changed the defense's strategies.

In sum, the record provides no indication that Petitioner's trial counsel's performance was deficient. Furthermore, the record does not suggest that, but for these alleged error, there is a reasonable probability that Petitioner would not have been convicted. Therefore, Petitioner's generalized complaints about his trial counsel's preparation and performance fall far short of demonstrating ineffective assistance of counsel and will be denied.

### D. Ground Six and Seven

Both of Petitioner's sixth and seventh grounds concern trial counsel failure to object to allegedly improper statements made by the prosecutor during closing argument. Consequently, the Court will address these claims together.

In his sixth ground, Petitioner claims that statements made by the prosecutor amounted to "bolstering." Petition at 17. In his

Rule 3.850 motion, Petitioner identified the following remarks as objectionable:

> There never were any ski masks. I'm telling you that now, there never were. Vol III at 538, lines 11-12.

> Is she [Witness Tippins] fabricating the ski masks? No. Here is how I know she was not fabricating that. And here is now [sic] I know no one else was fabricating that. Id. at 539, lines 16-18.

Exh. 9 at 40-41. Petitioner argues that the first remark amounted to testimony by the prosecutor and was inconsistent with the evidence presented at trial. Id. at 42-42. In particular, Petitioner points out that the State in its opening told the jury that Ms. Tippins, the neighbor, saw two men, one with a white ski mask and one with a black ski mask. Id. at 41. Also Mr. McConnon testified that the intruders had masks on. Id. at 42. Petitioner argues that the second statement was made to bolster the testimony of Debra Tippins. Id. at 43. Petitioner submits that the second remark was improper because the prosecutor improperly commented on the veracity of a witness. Id.

The State, in its response to Petitioner's Rule 3.850 motion, responded as follows:

> The "State's Closing Argument," attached to and made part of this response, appears on pages 532-552 of "Excerpt of Proceedings" Volume III of III (filed separately). The standard of review for prosecutorial misconduct is set out in Sheridan v. State, 799 So. 2d 223 (Fla. 2d DCA 2001), citing Voorhees v. State, 699 So. 2d 602 (Fla. 1997): We note that the standard of review for prosecutorial misconduct is very strict. In order to require a new trial, the prosecutor's comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so

harmful or fundamentally tainted as to require a new
trial, or be so inflammatory that they might have
influenced the jury to reach a more sever verdict than it
would have otherwise reached. The State submits that the
prosecutor's argument was not prosecutorial misconduct.
Counsel cannot be deemed ineffective for failing to
prevail on a meritless issue. <u>Tefeteller v. Dugger</u>, 734
So. 2d 1009 (Fla 1999).

Exh. 10 at 4.

In his seventh ground, Petitioner contends that the prosecutor

shifted the burden of proof during closing argument. Petition at

18. As identified in his Rule 3.850 motion, Petitioner objects to

the following comment by the prosecutor:

You have to make your decision based on what you have.
It's an abiding conviction of guilt. Do you think it
happened the way I told you it happened? Or do you think
that it happened the way he told you that it happened?
Common sense. Vol III at 551, lines 20-24.

Exh. 9 at 45. Petitioner argues that this statement "allowed the

jury to convict Spears merely on a determination by it that they

did not believe his testimony as opposed to a finding that the

State proved its allegations." <u>Id.</u> at 46.

In response, the State argued:

The "State's Closing Argument," attached to and made part
of this response, appears on pages 532-552 of "Excerpt of
Proceedings" Volume III at 111 (filed separately). Since
Defendant chose to testify in this case, the prosecutor's
comment was in accordance with Florida Standard Jury
Instructions in Criminal Cases on "Weighing the Evidence"
and "Defendant Testifying." Counsel cannot be deemed
ineffective for failing to prevail on a meritless issue.
<u>Tefeteller v. Dugger</u>. 734 So. 2d 1009 (Fla 1999).

Exh. 10 at 4-5.

Federal habeas review of the propriety of comments made during a closing argument is limited. "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). The proper inquiry into prosecutorial remarks is whether the remarks are so egregious that the proceedings are rendered fundamentally unfair. Cargill v. Turpin, 120 F.3d 1366 (11th Cir. 1997). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir.1986)(en banc), cert. denied, 480 U.S. 911 (1987).

The role of an attorney in closing argument is to be an advocate and "to assist the jury in analyzing, evaluating and applying the evidence." U.S. v. Morris, 568 F.2d 396, 401 (5th Cir. 1978). "The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." Id.

Read in context, the prosecutor's remarks raised in ground six were counsel's interpretation of the evidence, which was supported by the trial testimony and is permissible. In pertinent part, during direct examination Tippins stated that the men had on what "looked like ski masks. They were all covered up, the whole bodies." Vol. I at 123, lines 6-7. When pressed by the prosecutor,

Tippins agreed that she saw a "white thing" covering one of the assailant's head "that [she] thought was a ski mask." Id. at 140, lines 16-18. During his summation, the prosecutor made clear that he was drawing a conclusion about the ski masks as he demonstrated how the hooded sweatshirt worn under a jacket might appear to be a mask if viewed from a distance during the evening. See Vol. III at 538-540. Thus, the remarks objected to in ground six constituted permissible argument by the prosecutor.

Similarly, the Court does not find that the prosecutor's comment in ground seven shifted the burden of proof. Read in context, the challenged comment was offered to rebut the contrary version of events presented by Petitioner. The prosecutor did not tell the jury that the Petitioner was required to introduce evidence that he did not commit the crime, or that Petitioner had the burden of proving someone else committed the crime. Further the trial court in charging the jury explained that the State bears the burden of proof on each element beyond a reasonable doubt. Ex. 2, Vol III at 564, 579. The court also instructed the jury that Spears is presumed not guilty and "is not required to present evidence or prove anything." Id. at 579, lines 19-20.

The Court finds that the State court's rejection of these claims were neither an unreasonable application of Strickland nor an unreasonable determination of the facts. Thus, the Court deems grounds six and seven to be without merit.

**Ground Eight**:  **Cumulative Error**

In his eighth ground for relief, Petitioner submits that the cumulative errors by counsel set forth in grounds two through seven demonstrate counsel was ineffective.  Petition at 19.  In his Rule 3.850 motion, Petitioner states that the "case portrays a pattern of errors and omissions that wind their way from the pretrial phase all the way to closing argument."  Exh. 9 at 47.  Petitioner contends that the "in the aggregate" counsel's performance must be deemed not competent.  Id. at 49.

The State in response stated that "[a] mere conclusory allegation of ineffective assistance is insufficient to warrant an evidentiary hearing.  Jones v. State, 845 So. 2d 55 (Fla. 2003), and Kennedy v. State, 547 So. 2d 912 (Fla. 1989)."  Exh. 10 at 5.

No Supreme Court authority recognizes ineffective assistance of counsel "cumulative error" as a separate violation of the Constitution, or as a separate ground for habeas relief.  See Lorraine v. Chyle, 9 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), amended on other grounds, 307 F.3d 459 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003); Forrest v. Fla. Dep't of Corr., Case No. 08-14418, 2009 WL 25681815 (11th Cir. 2009).  The Supreme Court has stated that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability

of the finding of guilt." <u>U.S. v. Chronic</u>, 466 U.S. 648, 659, fn. 26 (1984).

Further, in <u>Spears v. Mullein</u>, 343 F.3d 1215, 1251 (10th Cir. 2003), the court stated, "[b]ecause the sum of various zeroes remains zero, the claimed prejudicial effect of their trial attorneys' cumulative errors does not warrant habeas relief." Likewise, Petitioner has not shown that any of the aforementioned ineffective assistance of counsel claims have merit. Thus, Petitioner cannot show that the cumulative effective of these claims had any impact of the outcome of his case, and this ground will be denied as without merit.

### <u>Ground Nine</u>:   **Jury Instruction Error**

In ground nine, Petitioner argues that the trial court erred by using the word "and/or" in the jury instructions. Petition at 19. Petitioner points out that he raised this claim in his State petition for writ of habeas corpus. <u>Id.</u>  In Response, Respondent argues that ground nine is procedurally defaulted because the claim of trial court error should have been raised on direct appeal, not in a State habeas corpus proceeding. Response at 21.

Upon review of the record, Petitioner raised this trial court error claim for the first time in his State petition for writ of habeas corpus filed in the State appellate court. <u>See</u> Exh. 16 (stating, "In Mr. Spears case of use [sic] and/or confusion engendered by the [sic] 'and/or' was if anything heightened rather

than cured by the standard instruction."). The State appellate court denied Petitioner relief on this claim. Exh. 17.

In Florida, claims of trial court error are foreclosed from collateral review when they could have and should have been raised on direct appeal. Sampson v. State, 845 So. 2d 271, 272 (Fla. 2d DCA 2003). This rule is regularly and consistently applied by the Florida courts. See Gore v. State, ___ So. 2d ___, 2009 WL 1792798 *6 (Fla. June 25, 2009); Bowls v. State, 979 So. 2d 182, 191 (Fla. 2008). Petitioner did not raise the jury instruction claim on direct appeal. See Exh. 5. "Habeas corpus is not to be used for additional appeals of issues that could have been or were raised on appeal or in other post-conviction motions." Green v. State, 975 So. 2d 1090, 1115 (Fla. 2008) (citing Mills v. Dugger, 559 So. 2d 578, 579 (Fla. 1990); White v. Dugger, 511 So. 2d 554 (Fla. 1987); Blanco v. Wainwright, 507 So. 2d 1377 (Fla. 1987)). Therefore, the Court agrees with Respondent that ground nine was not properly exhausted before the Florida courts and is now procedurally defaulted.

Petitioner does not overcome this procedural bar by a showing of cause for the default, or resultant prejudice from the default. Petitioner also does not argue, and this Court does not independently find, that this claim amounts to a fundamental miscarriage of justice. Consequently, the Court finds ground nine is subject to dismissal as being procedurally barred.

Even if the Court deemed the ground not procedurally barred, the fact that a jury instruction is alleged to be incorrect under state law is not a basis for federal habeas relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983); <u>Jamerson v. Sec'y Dep't of Corr.</u>, 410 F.3d 682, 688 (11th Cir. 2005). Petitioner's sole argument is that the trial court erred by using the conjunction "and/or" in the jury instructions. Petitioner's argument is not a basis for federal review. <u>See</u> <u>generally</u> Exh. 2 at 564-585 (jury instructions). As such, in the alternative, the Court finds ground nine fails to raise a federal issue.

**<u>Ground Ten</u>: Prosecutor's Use of False Testimony**

In ground ten raised in his Supplement, Petitioner argues that the prosecutor knowingly introduced the false testimony of one of the victims, Felix Guzman Aguilero (hereinafter "Aguilero"), during his trial. Supp. at 2. Specifically, Petitioner compares Aguilero's testimony presented at his brother's trial to Aguilero's testimony presented at his own trial, arguing that Aguilero's latter testimony, during his own trial, to an individual named Carlos as Aguilero's uncle was false. <u>Id.</u> Petitioner further asserts that the prosecutor knew that Aguilero was not Carlos' nephew from the earlier trial of his brother, but still introduced the testimony. <u>Id.</u>

In Response, Respondent argues that Petitioner did not exhaust this claim in the State courts. Supp. Resp. at 3. In particular,

Respondent points out that Petitioner did not raise this claim at trial and then on direct appeal. _Id._ at 5. Respondent further states that Petitioner could not raise this claim in a rule 3.850 motion because it should have been raised, if at all, at trial and on direct appeal. _Id._ Florida courts have regularly and consistently apply this rule. _Id._ (citing _Dailey v. State_, 965 So. 2d 38 (Fla. 2007)(stating claims of prosecutorial misconduct premised on facts in record could have and should have been raised on direct appeal and were therefore procedurally barred); _Spencer v. State_, 842 So. 2d 52, 60 (Fla. 2003)(substantive prosecutorial misconduct claims raised in a rule 3.850 motion were procedurally barred)(other citations omitted)). As such, Respondent contends that ground ten is now procedurally defaulted under State law and Petitioner does not excuse the default by a showing of either cause, prejudice, or a fundamental miscarriage of justice. _Id._

        Upon review of the record, the Court agrees that ground ten is procedurally defaulted. Petitioner never raised this claim before the State courts; and, as previously discussed, State procedural rules prohibit Petitioner from filing the claim now. In order to have properly exhausted this claim, Petitioner should have raised this claim on direct appeal. _Spencer v. State_, 842 So. 2d 52, 61 (Fla. 2003). Petitioner, through appellate counsel, raised two claim of trial court error on matters unrelated to the claim _sub judice_ on direct appeal. _See_ _generally_ Exh. 5.

Petitioner, in fact, concedes that he raises ground ten for the first time in the instant Petition. Supp. Reply at 2. Petitioner, however, asserts that he establishes "cause" to overcome the procedural default because his defense counsel did not have "independent access to th[e] material" and the State failed to disclose it. Id.

Contrary to Petitioner's assertions, the Court finds that Petitioner has not established an equitable exception to overcome the procedural default. "The requisite cause 'ordinarily turns on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Philmore v. McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009)(internal citations omitted). Here, other than Petitioner's conclusory allegations, nothing in the record establishes that an external objective factor impeded either defense counsel or appellate counsel from raising this claim on Petitioner's behalf at trial or on direct appeal. In fact, Petitioner knew that the victim, Aguilero, had testified in both codefendants' cases prior to the time he went to trial because the codefendants' cases took place before Petitioner's trial. Based on the foregoing, the Court dismisses ground ten as procedurally defaulted.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The Florida Attorney General is dismissed and Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the named Respondent.

2.    Grounds one and nine of the Petition (Doc. #1) and ground ten of the Supplement (Doc. #7) are **DISMISSED** for the reasons set forth above.

3.    Grounds two through eight of the Petition (Doc. #1) are **DENIED** for the reasons set forth above.

4.    The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __28th__ day of September, 2009.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record